FILED
2009 Sep-03 PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JENNIFER L. CHANDLER,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 4:08-CV-00440-RDP |
| **MICHAEL J. ASTRUE, Commissioner of Social Security** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Jennifer L. Chandler brings this action pursuant to Section 1631(c) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

### I.      Procedural History

Plaintiff protectively filed her application for SSI benefits on December 6, 2004, alleging she suffers from a generalized anxiety disorder, post traumatic stress disorder, and is bi-polar. (Tr. 39, 50-53, 64). Plaintiff alleges a disability onset date of August 25, 2004. (Tr. 50, 65). Plaintiff's application was denied and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 23-28, 40-42). Plaintiff's case was heard by ALJ Michael L. Brownfield on March 23, 2007 in Anniston, Alabama. (Tr. 198). In a decision dated September 24, 2007, the ALJ determined that

Plaintiff was not eligible for SSI benefits because she was not disabled within the meaning of the Act. (Tr. 21).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 11, 2008. (Tr. 3-5). The ALJ's decision then became the final decision of the Commissioner, and therefore a proper subject for this court's review under 42 U.S.C. § 1383(c). Plaintiff timely filed a civil action for review by this court on August 12, 2008. (Pl. Compl., Aug. 12, 2008).

**II.    ALJ Decision**

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer

perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 6, 2004. (Tr. 13). The ALJ determined that Plaintiff has a combination of impairments considered "severe" under the Act: post traumatic stress disorder, generalized anxiety disorder, depression, and bipolar disorder. (Tr. 13). Nonetheless, the ALJ determined that Plaintiff's impairments, considered either alone or in combination, fail to meet or medically equal the requirements for any impairment in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4. (Tr. 15).

According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (Tr. 19). After consideration of all the medical evidence, including Plaintiff's subjective complaints, the ALJ determined that Plaintiff retains the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: perform only simple, non complex job tasks; deal mainly with objects, not people; not responsible for safety and welfare of others; no production quotas required; and contact with the general public and co-workers is brief, infrequent, and casual. (Tr. 17). The ALJ found that Plaintiff was unable to perform any past relevant work. Because Plaintiff's past relevant work as a cashier, receptionist, waitress, dishwasher, deli worker, and maintenance worker at a gas station are classified as unskilled, the transferability of job skills was not an issue in this case. 20. C.F.R. 416.968. (Tr. 20, 65-66).

The ALJ called a vocational expert ("VE") to testify who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 219-24). The VE testified that an individual with Plaintiff's limitations could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 221-22). Based on the testimony of the VE, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing. (Tr. 20-21). Thus, the ALJ ruled that Plaintiff was not under a disability at any time through the date of the decision and, therefore, Plaintiff is not entitled to a period of benefits. (Tr. 21).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 9-2, at 13). Plaintiff advances two arguments why this court should grant the relief sought: (1) the ALJ did not assign proper weight to the opinions of the medical sources of record, and (2) the ALJ failed to state reasons supported by substantial evidence for rejecting Plaintiff's subjective complaints. (Doc. #9-2, at 9-13).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

> **A.     In Assessing the Medical Opinions as to Plaintiff's Work Related Restrictions, the ALJ Applied Proper Legal Standards and Gave Proper Weight to the Opinions of the Physicians.**

Plaintiff argues that the ALJ did not use the proper legal standard in assigning proper weight to the opinions of the medical sources of record. (Doc. #9-2, at 9). It is Plaintiff's position that the ALJ did not afford controlling weight to the opinion of Sue Suggs, CRNP, who had been treating Plaintiff since 2001, and only gave some weight to June Nichols, Psy.D., the consultative psychologist, all the while giving deference to the state agency psychiatrist, a non-examining source. (Doc. #9-2, at 9). Plaintiff argues that the ALJ erred in rejecting the opinions of these examining

5

sources while giving controlling weight to the opinion of the non-examining reviewing physician. (Doc. #9-2, at 9). This argument is without merit as substantial evidence in the record supports the ALJ's determination and the ALJ used proper legal standards in arriving at her decision.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Also, an ALJ may properly reject the opinion of any medical source when the evidence of record supports a contrary conclusion. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981)).

The ALJ determined that there was good cause to not afford the opinion of Plaintiff's treating physician, Sue Suggs, CRNP, controlling weight because it "appears to be inconsistent with her own clinical findings of record." (Tr. 19). In this case, the ALJ properly noted that Sue Suggs was a treating source. (Tr. 19). In a letter dated October 16, 2006, Suggs stated that she had treated Plaintiff for at least six years for generalized anxiety and Post-Traumatic Stress Disorder. (Tr. 146). Suggs opined that Plaintiff's anxiety prevented her from driving and interfered with her interpersonal interactions, and that Plaintiff had significant difficulty with concentration, memory, and comprehension that would prevent her from working. (Tr. 146). Suggs also stated that she had prescribed multiple medications to Plaintiff, but her symptoms remained uncontrolled, leading to a diminished ability to cope with stress and daily activities. (Tr. 146). However, contrary to what Suggs stated in her letter, she provided Plaintiff with medication samples (Cymbalta) in August 2006

and noted that after taking the medication samples for a few weeks, Plaintiff reported improvement in her overall mood, a decrease in irritability, and a significant improvement in her pain symptoms. (Tr. 150). On August 22, 2006, Suggs saw Plaintiff and continued her on this same medication. (Tr. 150). During later visits in September and October, Plaintiff did not complain of any mental health symptoms. (Tr. 148-49).

The record appears to indicate that in or around October 2006 (when Suggs rendered her opinion), Plaintiff had obtained some relief from her mental symptoms by taking the prescribed medication. (Tr. 148-50). Accordingly, because there was good cause shown, the ALJ was allowed to disregard Sue Suggs's opinion as "it appears to be inconsistent with her own clinical findings of record." (Tr. 19). The fact that Plaintiff later complained of a total lack of emotion and no interest in sex, eating, or getting dressed is irrelevant as it happened five months after Suggs gave her opinion. (Tr. 146-47, 157). Also of note is that the medical plan for addressing these issues was to simply increase Plaintiff's dosage of Cymbalta. (Tr. 157). Additionally, the ALJ did not afford the opinion of Sue Suggs controlling weight because he found it to be "largely based upon [Plaintiff]'s subjective allegations, which are not credible." (Tr. 19).

When deciding what weight to give to medical source opinions the ALJ considers the following factors: examining relationship, treating relationship, supportability, consistency, specialization, and any other factors which tend to support or contradict the opinion. *See* 20 C.F.R. § 416.927(d) (2008). Therefore, the weight afforded a medical source's opinion depends upon the extent by which it is supported by clinical or laboratory findings and its consistency with other record evidence. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).

The ALJ did not fail to give proper weight to the consultative psychologist, because her opinion was not supported by her own clinical findings. The ALJ noted that in February 2005, June Nichols, Psy. D., performed a consultative psychological evaluation of Plaintiff, diagnosing post-traumatic stress disorder and generalized anxiety disorder. (Tr. 14, 20, 111-15). Dr. Nichols performed IQ testing, finding that Plaintiff functioned in the average range of intellectual ability. (Tr. 113). Dr. Nichols opined that, due to Plaintiff's anxiety, her ability to relate interpersonally and withstand the pressures of everyday work activity was severely impaired, and that she would have some interference in her ability to understand, remember, and carry out work related instructions. (Tr. 113-14). Based on her exam findings, however, Dr. Nichols assigned Plaintiff a Global Assessment of Functioning (GAF) score of 60. (Tr. 113). A GAF score of 60 indicates only a moderate level of symptoms or a moderate limitation in social, occupational, or school functioning. *See* American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. 2000) (DSM-IV-TR). In making his decision, the ALJ stated that he assigned "some weight" to the report of Dr. Nichols. (Tr. 20). The ALJ noted that Dr. Nichols' opinion that Plaintiff was severely limited in her ability to relate interpersonally and withstand everyday work pressures was inconsistent with other medical evidence of record and her assigned GAF score of 60. (Tr. 20, 111-15). Therefore, because the opinion of Dr. Nichols was neither supported by her own clinical findings nor consistent with other record evidence, the ALJ followed proper legal standards in assigning some weight.

Moreover, the ALJ gave proper weight to the opinion of the state agency reviewing psychiatrist because the reviewing source's opinion was supported by the record as a whole. (Tr. 20, 116-34). The state agency psychiatrist reviewed Plaintiff's records in March 2005. His opinion was

based on all the evidence in the file. (Tr. 116). After his review of the evidence, he opined that Plaintiff had moderate limitations in the ability to understand, remember, and carry-out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination and proximity to others without distraction; interact with the public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers and peers; and respond appropriately to changes in the work setting. (Tr. 116-18). The ALJ properly took these opinions into account.

   **B. The ALJ's Reasons for Rejecting Plaintiff's Subjective Complaints are Supported by Substantial Evidence.**

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible. (Tr. 19). The ALJ cited three reasons for this conclusion: (1) Plaintiff's psychiatric symptoms have been managed by medication; (2) she had not been treated by mental health or hospitalized for psychiatric reasons, and (3) her activities of daily living are inconsistent with a disabling mental impairment. (Tr. 19). Plaintiff argues that the ALJ's findings concerning the intensity, persistence and limiting effects of her symptoms are not supported by the record.

In making his RFC finding, the ALJ properly evaluated Plaintiff's subjective allegations of disabling symptoms. (Tr. 17-19). The standard for evaluating subjective complaints in the Eleventh Circuit requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain/limitations arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain/limitations.

9

*Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The ALJ determined that there was evidence that Plaintiff suffered from an underlying medical condition which could reasonably be expected to produce her pain or other symptoms. (Tr. 17-19). Once an impairment that could reasonably be expected to produce the symptoms alleged has been shown, the intensity and persistence of the symptoms will be evaluated based on all the available evidence. 20 C.F.R. § 416.929(c)(1) (2008). Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the ALJ must carefully consider any other information submitted about symptoms. 20 C.F.R. § 416.929(c)(3) (2008). Some factors relevant to symptoms, such as pain, which are considered in evaluating the credibility of a claimant's statement include (among others): the type, dosage, effectiveness, and side effects of any medication claimant takes or may have taken to alleviate pain or other symptoms; the claimant's daily activities; and treatment, other than medication, claimant receives or has received for relief of pain or other symptoms. *Id.*

In challenging the ALJ's conclusion, Plaintiff argues there is evidence that her medications have not controlled her symptoms. Plaintiff cites the fact that both Suggs and Dr. Nichols state that her medication had not worked. (Tr. 114, 146). However, there is substantial evidence for rejecting their opinions. Suggs' opinion was not given great weight because at the same time she made this statement, the evidence from her own medical records showed that the medication was working. (Tr. 147-50). Dr. Nichols opinion was given in February 2005, over a year before the medication in question was prescribed. (Tr. 111-15, 147, 150).

Further, Plaintiff argues that the findings made by the ALJ regarding the inconsistency between her claims of disability and her self-reported daily activities are not supported by the evidence as a whole. The ALJ noted Plaintiff's cooking, washing, shopping, doing laundry, and other

10

activities as evidence Plaintiff has only moderate restrictions. Plaintiff argues that it is disingenuous to look only at this evidence and ignore Plaintiff's testimony of excessive sleeping, not getting dressed, fear of leaving the house alone, frequent panic attacks, and inability to concentrate, all of which the VE testified would preclude work. (Tr. 221-24). However, when considering all the evidence, it is exactly these conflicts in Plaintiff's testimony – *i.e.*, her claims she cannot do certain things, but admissions she does other things – upon which the ALJ based his credibility findings. The medical record, including the GAF score of 60, along with Plaintiff's described daily activities suggest that she can function and work.

Finally, Plaintiff argues that just because she has not been hospitalized for debilitating medical problems, there is no evidence of record upon which to find that this is an indication of her credibility or the severity of her medical condition. However, the scope of treatment received is a proper factor to consider in evaluating a claimant's subjective complaints of disabling symptoms or pain. 20 C.F.R. § 416.929(c)(3)(v) (2008). Plaintiff argues that because the ALJ is not considering treatment received, but rather treatment that was not received, the ALJ is improperly substituting his own opinion for that of medical experts. And, since the facts show that Plaintiff not only did not receive treatment but was turned away from a treatment facility, it should be considered in the evaluation. Certainly, if as the Eleventh Circuit has held, an ALJ can properly consider conservative treatment as evidence that contradicts a claimant's subjective complaints, *see Wolfe v. Chater*, 86 F.3d 1072,1078 (11th Cir. 1996), then the declination of treatment can also be evaluated as contradicting evidence. After careful review, the court finds the ALJ's findings were based upon substantial evidence.[1]

---

[1]The court notes that at the administrative hearing, the ALJ elicited the testimony of a Vocational Expert ("VE"), Claude Peacock. (Tr. 220-23). *See* 20 C.F.R. § 416.966(e) (2008) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this      3rd      day of September, 2009.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

specific occupations in which they can be used...we may use the services of a vocational expert or other specialist."); *Welch v. Bowen*, 854 F.2d 436, 439 (11th Cir. 1988). The ALJ posed a hypothetical question to the VE, asking him to assume a person with Plaintiff's vocational profile who could perform only simple, noncomplex job tasks, limited to work that deals primarily with objects, not people, with no responsibility for the safety and welfare of others or the satisfaction of production quotas, and with only brief, infrequent, and casual contact with the general public. (Tr. 221). In response, the VE testified that such a hypothetical individual could perform the representative light, unskilled jobs of machine tender, tray handler, and parts cleaner, numbering (overall) 1,344 in north central Alabama. (Tr. 221-22). Thus, based on the VE's testimony, the ALJ's finding that Plaintiff could perform other work available in significant numbers in the national economy is supported by substantial evidence. *See McSwain v. Bowen*, 814 F.2d 617, 620 (11th Cir. 1987).